IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02036-JLK

L.M.M.,

     Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

     Defendant.

---

## MEMORANDUM DECISION ON APPEAL

---

Kane, J.

In November 2018, Plaintiff L.M.M.[1] applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of that Act, alleging a disability as of October 2017. Plaintiff now petitions this court for review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner"), denying her applications for DIB and SSI benefits.[2] All administrative prerequisites for appeal have been satisfied, and jurisdiction is proper under 42 U.S.C. § 405(g). The matters on appeal have been fully briefed (ECF Nos. 14, 17, 18). I have determined oral argument would not be of material assistance and I affirm the Commissioner's decision for the reasons stated below.

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initial only."

[2] L.M.M. filed the Petition in this case on July 28, 2021. *See* ECF No. 1. After the appeal was fully briefed, the case was assigned to another judge of this court. Due to the press of court business, the case was reassigned to me in October 2022.

# I.    LEGAL STANDARD

The exclusive questions for review on a Social Security appeal are whether there is substantial evidence supporting the final decision of the Commissioner and whether the correct legal standards were applied by the administrative law judge ("ALJ"). 42 U.S.C. § 405(g); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (citation omitted). "[T]he threshold for such evidentiary sufficiency is not high," but it is "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). In reviewing a denial of benefits, I cannot reweigh the evidence or substitute my judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

To qualify for SSI benefits under 42 U.S.C. § 1382(a)(1), a claimant must be aged, blind, or disabled and must be eligible based on her income and resources. To qualify for DIB under 42 U.S.C. § 423(a), a claimant must, among other requirements, be found to be under a disability while insured for disability benefits. A claimant can only be found disabled if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A claimant's disability must have lasted or be expected to last for at least 12 months. *Id.* § 423(d)(1)(A).

In determining whether a claimant is disabled, the ALJ must follow the five-step sequential analysis set forth in § 404.1520(a)(4) and § 416.920(a)(4) of Title 20 of the Code of Federal Regulations. *See also* Carolyn A. Kubitschek & Jon C. Dubin, Soc. Sec. Disability L. &

Proc. in Fed. Court § 3.1 (2022 ed.) (explaining five-step process). If a decision regarding the claimant's disability can be reached at any step, the evaluation does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). It is a claimant's burden to prove she is disabled at the first four stages of the process. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009). Before the ALJ proceeds to the fourth step in the process, a claimant must establish her residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An RFC is the most a claimant can do despite her impairments. *See id.* §§ 404.1545 (definition of RFC), 416.945 (same); *see also* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (clarifying that an RFC concerns a claimant's ability to work the equivalent of 8 hours a day, 5 days a week). If the ALJ determines a claimant is not disabled at step four, the burden of proof shifts to the Commissioner at the fifth step of the sequential analysis. *Grogan*, 399 F.3d at 1261.

## II.    BACKGROUND

At the time of her applications for DIB and SSI benefits, Plaintiff was 43 years old. Administrative Record ("AR") 278.[3] She has completed at least three years of college. AR 314. In the past, she has worked as a tax preparer, van driver, house parent, telephone order clerk, and hair weaver. AR 59-60.

L.M.M. previously applied for DIB and SSI benefits and was denied such benefits on June 23, 2010; June 10, 2016; and October 18, 2017. AR 15. For the present applications, Plaintiff's alleged disability was due in part to the combined effects of injuries she sustained in a 2012 automobile-pedestrian accident that resulted in back pain, joint pain, and several related

---

[3] The Administrative Record in this case is located at ECF No. 9, including subparts 1 through 10.

mental health issues. AR 55. Plaintiff reported she was able to complete a variety of activities at home, including caring for her son, preparing meals, washing clothes and dishes, and shopping for groceries. AR 347-48.

L.M.M.'s claims were initially denied in May 2019, and they were again denied on reconsideration in December 2019. Based on the ALJ's analysis of the record and testimony presented at a December 2020 hearing, the ALJ determined Plaintiff suffers from five severe impairments: degenerative disc disease, degenerative joint disease, post-traumatic stress disorder ("PTSD"), anxiety, and depression. AR 18. At the fifth step of the sequential analysis, however, the ALJ concluded L.M.M. was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. The Social Security Appeals Council denied L.M.M.'s request for review.

On appeal, L.M.M. argues the ALJ's findings were not supported by substantial evidence. Specifically, she contends the ALJ erred by failing to properly evaluate the medical opinion of Dr. Wesley.

A.    **Medical Treatment[4]**

In July 2017, L.M.M. reported increased anxiety to her primary care doctor. AR 427. In August 2018, she reported to a different primary care provider, Laura Chilson, FNP, that she was experiencing depression due to her "pain and frustration with trying to see specialists." AR 506.

In the summer of 2019, Plaintiff sought treatment for a mood disorder. She attended a single appointment at Peak Interactive Wellness, during which she described herself as a "worrier" and reported experiencing panic attacks, social anxiety, flashbacks, hypervigilance,

---

[4] Plaintiff only raises issues related to her mental health on appeal, so I do not discuss the medical records or treatment related to her physical conditions such as degenerative disc and joint disease. *See* ECF No. 14 at 11-16.

sleep disturbances, anger outbursts, and irritability. AR 684. The provider noted that L.M.M. was well-groomed, made good eye contact, was cooperative, and had normal speech. AR 685. Plaintiff also exhibited goal-directed and logical thought processes, intact short-term and long-term memory, intact concentration, good insight, and good judgment. *Id.* However, she had a depressed and tearful affect and an anxious and depressed mood. *Id.* L.M.M. was diagnosed with PTSD, generalized anxiety disorder, and an unspecified mood disorder. *Id.*

In January 2020, L.M.M. underwent an initial mental health assessment at the Mental Health Center of Denver and reported similar symptoms as she had the previous year, such as a depressed mood, insomnia, hypervigilance, and flashbacks. AR 1018. She also noted the recent onset of auditory hallucinations. AR 1019. On the day of her assessment, she was well-groomed, pleasant, engaged, and insightful, though she struggled to complete her paperwork. AR 1021. The therapist who completed the assessment recommended individual therapy and psychiatry services. AR 1021.

L.M.M. received regular psychotherapy treatment throughout 2020. *See, e.g.*, AR 939, 963, 968, 989, 994, 1013. In March 2020, Plaintiff was diagnosed with PTSD and anxiety disorder. AR 1008. That same month, L.M.M. attended a medication review appointment at the Mental Health Center of Denver. She reported that, while "still a little depressed," she was nevertheless feeling "pretty good." AR 983. L.M.M. noted small improvements in her mood as a result of her medications. *Id.* However, she described ongoing mood swings, low frustration tolerance, and anxiety. *Id.* Again, she was well-groomed, her affect was appropriate, her thought content was normal, and her judgment and concentration were intact. AR 984.

At her medication review appointment in April 2020, L.M.M. reported she was experiencing mood stability with less episodes of anger. AR 973. She also noted a "significant

improvement" in her frustration intolerance and less irritability. AR 973-74. L.M.M.'s speech

was coherent, her insight was fair to good, her judgment was intact, and her remote memory and

attention were grossly intact. AR 974.

In November 2020, L.M.M.'s treatment provider described her affect as labile, but noted

that Plaintiff's psychiatric medications appeared "to be working generally well" and that L.M.M.

was "optimistic about her future prospects." AR 1239, 1242. At that time, L.M.M. showed

appropriate behavior, normal speech, linear and coherent thought processes, intact recent and

remote memory, grossly intact language, an appropriate fund of knowledge, and fair insight and

judgment. AR 1240-41.

The records from Plaintiff's primary care provider in 2020 were similar in terms of their

descriptions of L.M.M.'s mental health impairments. In May 2020, L.M.M.'s treating physician

reported that Plaintiff was "doing well overall." AR 1130. In June, L.M.M. appeared alert and

oriented, with a normal affect and appropriate speech. AR 1128. She could also follow complex

commands. *Id.* Likewise, in September 2020, L.M.M. was pleasant, had appropriate speech, and

was able to follow complex commands, though she complained of a worsening memory. AR

1122.

**B.    Consultative Exams**

L.M.M. saw Laura Chilson, FNP for a mental capacity assessment on January 24, 2019.

Nurse Practitioner Chilson determined Plaintiff had mild limitations in understanding,

remembering, or applying information; mild or no limitations in adapting or managing herself;

and mild or no limitations in interacting with others. AR 570-72. Regarding concentration,

persistence, and pace, Nurse Practitioner Chilson found moderate limitations in addition to an

extreme limitation regarding L.M.M.'s "ability to work a full day without needing more than the allotted number or length of rest periods during the day." AR 571.

In May 2019, L.M.M. underwent a psychological consultative examination with Dr. Immaculate Wesley, Psy.D. During the examination, L.M.M. was well-groomed, cooperative, and had a positive attitude. AR 611. Dr. Wesley observed L.M.M. to cry and exhibit pain behaviors, and she noted that her affect was labile. AR 613. L.M.M. reported experiencing auditory hallucinations most recently in 2013, and Dr. Wesley noted that no perception disorders were reported or exhibited during the examination. *Id.* She found L.M.M. was unable to recall any items after a delay, her judgment was poor, and she had "serious problems with attention and concentration." AR 614. She also found, however, that L.M.M. could recall five out of five items immediately, and that she had good insight and abstraction ability. *Id.* Dr. Wesley's diagnostic impression was that L.M.M. suffered from PTSD, bipolar disorder, panic disorder, social anxiety disorder, OCD, and a mild neurocognitive disorder. *Id.* She concluded with the following:

> [L.M.M.s'] abilities as related to basic work activities are markedly impaired at this time. Understanding is mildly impaired. Memory is moderately impaired. Sustained concentration is markedly impaired. Persistence and pace are markedly impaired. Social interaction is moderately impaired. Adaptation is markedly impaired. Should she receive benefits at this time she can handle her monies.

AR 614-15.

Also in May 2019, Dr. Helen Patterson Ph.D. conducted a consultative examination. Dr. Patterson concluded L.M.M.'s orthopedic records "reliably indicated" a lack of mental health issues. AR 106. She noted L.M.M.'s reported periods of depression were related to situational stressors such as domestic violence. *Id.* Accordingly, Dr. Patterson determined the record did not establish the existence of depression or anxiety for an extended period, and that L.M.M.'s impairments related to both depression and anxiety were not severe. AR 105-06. In preparing her

opinion, Dr. Patterson considered Dr. Wesley's conclusion that L.M.M.'s "abilities as related to basic work activities are markedly impaired," and found Dr. Wesley's conclusion to lack objective support. AR 104.

Upon reconsideration of L.M.M.'s denial for benefits earlier that year, a state agency psychological consultant, Dr. Anne Naplin, Ph.D., conducted another consultative examination on December 4, 2019. Dr. Naplin noted that in the intervening months, L.M.M. had displayed normal mood and affect, normal behavior, appropriate speech, and that she could follow complex commands. AR 141. L.M.M. also had no issues with self-care, occasionally made meals, did laundry with assistance, and dropped her son off at school. *Id.* Dr. Naplin determined, however, that Plaintiff had no concentration skills, poor memory, and "mostly stay[ed] home due to social anxiety." *Id.* After concluding L.M.M.'s depression and anxiety impairments were not severe, she determined L.M.M. had the following moderate limitations: the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability "to perform at a consistent pace without an unreasonable number and length of rest periods"; and the ability to interact appropriately with the general public. AR 142, 147-48. With those limitations, Dr. Naplin concluded that L.M.M. "can follow simple instructions, sustain ordinary routines and make simple work[-]related decisions; can respond appropriately to supervisors[ and] coworkers but must have minimal to no interaction with the general public; [and] can deal with changes in a routine work setting." AR 148.

## C.   The ALJ's Decision

The ALJ conducted the familiar five-step sequential evaluation process to determine, at the fifth step, that L.M.M. was not disabled. AR 27. Based on L.M.M.'s medical evidence, the

ALJ found she had the following severe impairments: degenerative disc disease, degenerative joint disease, PTSD, anxiety, and depression. AR 18. The ALJ then determined these impairments did not meet or medically equal the requirements of the Social Security Administration's Listing of Impairments, either alone or in combination. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1; *id.* §§ 404.1520(d), 416.920(d). She therefore went on to consider L.M.M.'s RFC and concluded Plaintiff had the capacity to perform light work, with the following limitations related to her mental health impairments:

- She can understand, remember, and carry out simple instructions that can be learned in 30 days or less, and she can sustain concentration, persistence, and pace for those simple instructions for two-hour intervals, with normal breaks.

- She can occasionally interact with coworkers and supervisors, but she must not have direct interaction with the general public.

- She can adapt to simple workplace changes.

AR 21 (bullet points added).

In arriving at this RFC determination, the ALJ compared L.M.M.'s stated symptoms with other relevant evidence in the record. She determined L.M.M.'s "statements about the intensity, persistence, and limiting effects of her symptoms [were] inconsistent with the medical evidence and other evidence in the record." AR 22. Regarding her mental health, the ALJ noted that between August 2019 and November 2020, the record showed Plaintiff to generally have good insight and judgment; clear thought processes; the ability to follow complex commands; and appropriate behavior. AR 23-24. She also noted that L.M.M. "reported improvement in her symptoms with medication and other treatment" and that a physician stated Plaintiff's "psychiatric medications appeared to be working" at a medication review appointment. AR 24.

The ALJ specifically addressed the supportability and consistency of the four medical opinions relating to L.M.M.'s most recent application. In doing so, she found Dr. Patterson's

opinion that L.M.M.'s mental impairments were not severe unpersuasive. AR 25. Likewise, she did not find Dr. Wesley's opinion or Nurse Practitioner Chilson's opinion persuasive. AR 25-26. The ALJ found Dr. Naplin's opinion generally persuasive, however, because it was consistent with the record evidence and because "Dr. Naplin generally supported her opinion with an explanation of the evidence used to formulate it." AR 25.

Next, the ALJ determined L.M.M. was unable to perform any past relevant work based on her RFC. AR 26-27. Finally, relying on the testimony of a vocational expert, the ALJ found that there are jobs in the national economy L.M.M. can perform. AR 27-28. Consequently, she concluded L.M.M. was not disabled. AR 28.

## III.    ANALYSIS

Plaintiff's sole argument on appeal is that the ALJ's residual functional capacity finding is not supported by substantial evidence because the ALJ failed to properly evaluate Dr. Wesley's medical opinion. Specifically, L.M.M. argues the ALJ (1) mischaracterized Dr. Wesley's opinion, (2) "failed to appreciate the subjective nature of mental illness," and (3) "cherry-picked evidence to support the narrative that the opinion was inconsistent with the record." ECF No. 14 at 11. I address each in turn and find each argument unconvincing.

### A.    The ALJ Did Not Mischaracterize Dr. Wesley's Opinion

For claims filed after March 27, 2017, a medical source opinion is a "statement from a medical source about what [a claimant] can still do despite [her] impairment(s)." 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2). An opinion addresses whether a claimant has impairments that limit one of four specified abilities:

- The "ability to perform physical demands of work activities, such as sitting, standing, walking, . . . or other physical functions[.]"

- The "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]"

- The ability to meet other workplace demands.

- The "ability to adapt to environmental conditions, such as temperature extremes or fumes."

*Id.*

An ALJ is required to articulate how persuasive she finds "all of the medical opinions . . . in [a] case record." *Id.* §§ 404.1520c(b); 416.920c(b). In doing so, she must consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion." *Id.* §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). Of those five factors, the most important are supportability and consistency. *Id.* §§ 404.1520c(a); 416.920c(a).

Here, the ALJ properly considered Dr. Wesley's opinion.[5] In doing so, she accurately reported that the opinion is vague and "not fully supported by her own objective findings." AR 25. To elucidate, the ALJ explains that Dr. Wesley's assessment that L.M.M.'s basic work abilities are markedly impaired is undermined by Plaintiff's ability to spell a word backward and recite six digits forward, as well as her good insight, good abstraction, normal thought content, and cooperative behavior. *Id.* When addressing the consistency of Dr. Wesley's opinion and

---

[5] The Commissioner argues Dr. Wesley's opinion was not a "true" medical opinion because she "did not use vocationally relevant terms that could have shed light on Plaintiff's maximum work-related mental functional abilities, and thus meaningfully assisted the ALJ in formulating her RFC." ECF No. 17 at 10. While I agree with the ALJ's determination that Dr. Wesley's "opinion is vague, without reference to specific functional limitations," AR 25, I nevertheless find that Dr. Wesley's assessment constitutes a medical opinion, as defined by the regulations. 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

finding it *not* consistent with other evidence in the record, the ALJ states that L.M.M.'s "treating providers generally noted that she [has] normal speech, clear thought processes, intact judgment and insight, normal concentration, and intact memory." *Id.*

On appeal, Plaintiff contends the ALJ mischaracterized Dr. Wesley's medical opinion because the ALJ only mentions Dr. Wesley's statement that L.M.M.'s "abilities 'as related to basic work activities' were markedly impaired." ECF No. 14 at 11 (quoting AR 25). Plaintiff in essence suggests the ALJ could not possibly have found Dr. Wesley's opinion vague and "without reference to specific functional limitations" if the ALJ had reviewed the more specific findings that follow Dr. Wesley's general assessment of marked impairment. AR 25.

I disagree. The "specificity" in Dr. Wesley's opinion that Plaintiff alleges the ALJ overlooked is still quite unspecific. ECF No. 14 at 12. Following her general assessment of marked impairment, Dr. Wesley's opinion states: "Understanding is mildly impaired. Memory is moderately impaired. Sustained concentration is markedly impaired. Persistence and pace are markedly impaired. Social interaction is moderately impaired. Adaptation is markedly impaired. Should she receive benefits at this time she can handle her monies." AR 614-15. That additional analysis hardly addresses what L.M.M. could "still do despite [her] impairment," and to the extent it does, it is unquestionably vague. 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

Moreover, Plaintiff's argument is inconsistent. L.M.M. asserts the ALJ "downplay[ed]" the evidence in support of her disability. On the contrary, the ALJ focuses her attention on the most extreme limitation noted in Dr. Wesley's medical opinion: that L.M.M.'s "abilities 'as related to basic work activities' [were] markedly impaired." AR 25. Had the ALJ discussed Dr. Wesley's conclusions in more detail, she would have identified Dr. Wesley's additional statements that L.M.M.'s understanding was only *mildly* impaired, and that her memory and

social interaction were *moderately* impaired. *Id.* Those additional statements only lend further

support to the ALJ's finding of nondisability. *Id.*

**B.     The ALJ Did Not Fail to Appreciate the Subjective Nature of Mental Illness**

Plaintiff's argument that the ALJ failed to appreciate the subjective nature of mental

illness is also infirm. Plaintiff contends the ALJ was wrong to compare Dr. Wesley's objective

findings—that L.M.M. was able to spell backwards, recite digits forward, had good insight and

normal thought content, and cooperative behavior—with her medical assessment of a marked

impairment because "[t]he practice of psychology is necessarily dependent, at least in part, on a

patient's subjective statements." ECF No. 14 at 12 (quoting *Thomas v. Barnhart*, 147 F. App'x

755, 759 (10th Cir. 2005)). But the ALJ does not completely discount the subjective nature of

mental illness by faulting Dr. Wesley for relying too heavily on L.M.M.'s subjective account and

not enough on Dr. Wesley's objective findings. Further, the ALJ does not find Dr. Wesley's

opinion unpersuasive for that reason alone; her conclusion finds further support in the opinion's

vagueness and in the lack of support for the opinion's conclusions elsewhere in the record. AR

25. In short, Plaintiff's assertion that the ALJ did not recognize the subjective qualities of mental

illness is unfounded.

**C.     The ALJ Did Not Cherry Pick Evidence to Support Her Conclusions**

In her final argument, L.M.M. contends the ALJ cherry-picked a few "unremarkable

findings" from Dr. Wesley's evaluation to support her conclusion that (1) Dr. Wesley's medical

opinion was without objective support and (2) the opinion was inconsistent with other evidence

in the record. ECF No. 14 at 13.

Indeed, an "ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). In the present matter, however, the ALJ did not rely only on the parts of Dr. Wesley's opinion that were favorable to a finding of nondisability. On the contrary, the ALJ relied on other parts of Dr. Wesley's evaluation to support her conclusion that Dr. Patterson's opinion was unpersuasive. *See* AR 25. Specifically, the ALJ found Dr. Patterson's conclusion that L.M.M.'s mental impairments were not severe to be inconsistent with Dr. Wesley's report of Plaintiff's "rapid speech, [] labile affect, [] circumstantial thoughts, and . . . trouble recalling items after a delay," among other observations. *Id.* For that reason, the ALJ did not agree with Dr. Patterson's assessment but rather determined that "the evidence of record is consistent with a finding that the claimant's mental impairments cause moderate limitations." *Id.*

Having conducted a careful review of the record, I conclude the ALJ did not mischaracterize Dr. Wesley's findings, fail to appreciate the subjective nature of mental illness, or cherry pick evidence to support her conclusions. Because I find the ALJ's decision in this case is supported by substantial evidence, I affirm her denial of benefits under Title II and Title XVI of the Social Security Act.

## IV.    CONCLUSION

For the reasons stated in this order, I AFFIRM the Commissioner's determination that L.M.M. was not disabled, and I DISMISS this action.

DATED this 22nd day of November, 2022.

JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE

14